Hat, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit upon a contract for the construction of concrete walls for a ship lock in Black Rock Harbor and Channel at Buffalo, in the State of Few York. The contract was entered into on the 15th day of April, 1908, and the specifications therein referred to are made a part of the petition.
The plaintiff constructed a cofferdam, as required by the specifications, and upon completion it was found to be tight and efficient and served throughout the progress of the work to exclude the water down to bedrock. On March 22, 1909, the plaintiff started to pump out the cofferdam, and on April 15, 1909, the water was lowered to the bottom of the clay filling in the cofferdam.
As soon as the water had been lowered to the bottom of the clay filling large leaks developed in the bedrock. The water came up in large quantities at many places throughout the entire bedrock forming the floor of the inclosure. Paragraph 52 of the specifications is as follows:
*473 “52. If any leaks develop through the bedrock or through the cofferdam below the clay filling, when the inclosure is being pumped out, the contractor shall stop them under plans and agreements for payment therefor, to be made with the engineer, based upon the actual cost of labor and materials at current wages and prices, plus not exceeding 15 per cent for profit.”
The plaintiff, when these large leaks developed in the cofferdam inclosure, notified the engineer in charge of the work in writing of their existence, and certain plans and agreements for stopping the leaks were considered and adopted. These plans were approved by the engineer officer as methods of stopping the leaks under paragraph 52 above cited, and the plaintiff was paid the sum of $8,327.39 for the labor and material used in these methods of stopping the leaks. These methods, however, were only partially successful.
The plaintiff on July 31, 1909, wrote a letter to the engineer officer in charge of the work, setting forth that the only method of dealing with these leaks was to increase the existing pumping capacity. While the engineer officer did not accept this proposition of the plaintiff, yet he permitted the additional pumping to go on without protest and without suggesting any other method of stopping the leaks, and indeed acquiesced in this method of stopping the leaks as being the only one which would permit the continuance and completion of the work; and the plaintiff claimed payment for all work so done as a part of the cost of “stopping leaks” under paragraph 52 of the specifications. It is contended by the defendants that the pumping operations were not recognized as being a part of the work of stopping leaks and that the payment of the amount claimed by the petition is prohibited by paragraph 7 of the specifications, which is as follows:
“7. It is understood and agreed that the quantities given in these specifications are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. No allowance will be made for the failure of a bidder or of the contractor to estimate correctly the difficulties attending the execution of the work.”
*474 But the court is of the opinion that paragraph 7 does not control the labor and material used by the plaintiff in stopping leaks, for it clearly appears that the pumping process was necessary for controlling the leaks and to complete the work which the plaintiff had undertaken to perform. Therefore paragraph 52, which dealt with the stoppage of leaks, is the part of the contract which must be looked to in the disposal of this claim. That paragraph does not provide that the plans and agreements for stopping leaks shall be in writing. It only requires that the plans shall be agreed upon, and if they were agreed upon orally, or if all other plans agreed upon had been tried and the pumping process had been resorted to by the plaintiff after he had notified the engineer in charge of the work that that was the only method which was feasible for the purpose, and the engineer acquiesced by permitting the pumping to continue without protest, this would be a sufficient compliance with the provisions of paragraph 52 to entitle the plaintiff to a recovery.
Paragraph 51 of the specifications is as follows:
“ 51. The contractor shall furnish and maintain at least two good and sufficient pumping outfits, with pumps, engines, and supplies complete, for pumping out the inclosure and for keeping it drained to bedrock, as may be required, while his contract is in force.”
It is contended by the defendants that under this paragraph it was the duty of the plaintiff to completely unwater the cofferdam, and that no claim could be made for extra pumping until this was done. This contention can not be allowed for the reasons above stated, that the extra pumping was the method adopted by consent of the parties for stopping the leaks.
The plaintiff submitted bills for this additional pumping amounting to $54,748.79. These bills embrace the additional pumping from April 6, 1909, to October 8, 1910. Upon examination of these bills by the United States asistant engineers they were reduced to $42,895.74, which included 15 per cent profit, the claim itself being $36,719.81. It appears that the claimant did not have in operation sufficient pumping outfits until May 17, 1909; therefore the sum of $36,- *475 719,81 should be reduced by $5,079.89, that being the amount for material and labor from April 6, 1909, to May 17, 1909, so that the plaintiff is entitled to recover on this item $81,-639.92 plus 15 per cent profit.
The plaintiff is also demanding $1,865.38 for an extra amount of cement furnished, but paragraph 7 of the contract especially provides that no extra material shall be paid for unless the same is asked for in writing by the claimant. The plaintiff did not do this and is therefore not entitled to recover for this item.
It follows from the foregoing that the plaintiff should have judgment in the sum of $36,385.90, and it is so ordered.
All the judges concur.